Charles R. Toomajian III (SBN 302153)
　Email: charles.toomajian@zimmreed.com
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Tel: (612) 341-0400
Fax: (612) 341-0844

[Additional attorneys listed below]

*Attorney for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARKER ANDERSON, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>BROOKLINEN, INC., and DOES 1–10.<br><br>　　　　　　Defendants. | Case No. 3:25-cv-02446-RSH-KSC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>Motion Date:　November 21, 2025<br>Judge:　　　　Hon. Robert S. Huie<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

# INTRODUCTION

The issue before the Court is simple: Did Defendant Brooklinen ("Defendant") timely remove a case 246 days after service of the Complaint? Plaintiff maintains it did not. Defendant filed its Notice of Removal only on the day that its discovery responses were due—after failing to respond to the Complaint, defaulting, obtaining an extension to answer, then securing another extension that Defendant represented would be used to respond to discovery. (It was not.) The Court should reject Defendant's contention that its removal was timely and should remand this case.

Plaintiff served Defendant with his Class Action Complaint on January 15, 2025. ECF Nos. 1-2 and 1-3. Eight months later, after undergoing settlement discussions, and after having defaulted in the state court, Defendant filed its Notice of Removal to this Court. ECF No. 1. Although Defendant correctly points out in its Opposition that the Ninth Circuit only applies the thirty-day deadline to removal when the complaint, or a paper, on its face indicates that there are grounds for removal, that standard is plainly met here. The Complaint presented facts that made grounds for removal apparent, rendering Defendant's removal attempt untimely under controlling Ninth Circuit precedent. *See gen.* ECF No. 9. Additionally, the fact that Defendant already defaulted before the state court and engaged in settlement negotiations with Plaintiff evidence that (1) Brooklinen was apprised of the case's removability long before it filed its Notice of Removal, and (2) that Brooklinen is engaging in unfair gamesmanship, which courts in the Ninth Circuit have consistently rejected. For these reasons, Plaintiff respectfully requests that the case be remanded back to the state court.

To state the facts briefly, Plaintiff filed the Complaint on November 22, 2024. ECF No. 1-2. Prior to that, on August 9, 2024, Plaintiff served a CLRA notice letter ("CLRA Notice") on Defendant on August 9, 2024, pursuant to Cal. Civ. Code § 1782. *See* Ex. 1 to the Declaration of Charles Toomajian (hereinafter "Toomajian

1

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND
No. 3:25-cv-02446-RSH-KSC

Declaration"). In the CLRA Notice, Plaintiff requested Defendant to "produce business records identifying the number of units of Products which have been distributed for sale in the State of California" and "create and provide a consumer fund in an amount sufficient to provide Mr. Anderson and the Class a refund of Brooklinen's ill-gotten gains in connection with the advertising and sale of the Products." *Id*. at 11. The CLRA Notice also included a litigation hold notice directing Defendant to preserve "[s]ales and price data for the Products related to the claims described above for the past four years" and "[a]ll business records, including ESI, evidencing the number of units of products sold within California within the last four years" among other items. *Id*. at 12. Following service of the Complaint, Plaintiff and Defendant engaged in discussions related to the factual underpinnings of the case and potential resolution, including Plaintiff reiterating his request from the CLRA notice letter that Defendant provide sales data related to the total dollar amount and number of customers in California. Defendant never provided a response to those requests. Instead, Defendant defaulted at the state court without timely moving for dismissal or removal or filing an answer. ECF No. 1-5. Despite this, Plaintiff agreed to allow Brooklinen more time to respond instead of seeking entry of default. *Id.* But after Plaintiff permitted Brooklinen this additional time in good faith, including an additional extension to respond to discovery, Defendant filed its Notice of Removal to this Court on the day its extension for discovery responses ran out. *See* ECF Nos. 1 and 1-5.

## **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction, having subject matter jurisdiction over only those matters authorized by the Constitution and Congress." *Gray v. Marathon Petroleum Logistics Servs., LLC*, No. CV 20-7865-JFW(JCx), 2021 U.S. Dist. LEXIS 122516, at *2 (C.D. Cal. June 30, 2021) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). As such, the district court must

have been able to have original jurisdiction over the matter for it to be removable. *Id.* Removal under CAFA requires showing minimum diversity between the parties, an amount-in-controversy of over $5 million, and a putative class of over 500 members. 28 U.S.C. § 1332(d)(2); *Kuxhausen v. BMW Fin. Servs. NA Ltd. Liab. Co.*, 707 F.3d 1136, 1140 (9th Cir. 2013) ("Federal jurisdiction under CAFA has three elements: (1) there must be minimal diversity of citizenship between the parties, (2) the proposed class must have at least 100 members and (3) the amount in controversy must exceed[] the sum or value of $5,000,000.") (internal quotations removed). Although there is no presumption against removal under CAFA, remand is proper if the removal is untimely. *Gomez v. Roadrunner Transp. Servs.*, No. 23-cv-00119-JST, 2023 WL 5487663, at *2 (N.D. Cal. Aug. 23, 2023). In addition, the defendant has the burden of establishing removal jurisdiction. *Id.*

A removal must be timely, and there are three different time limits for removal. There are two thirty-day windows to remove a case under CAFA: first, within the initial thirty days after a complaint is served in state court, or second, within thirty days after receiving a paper from the plaintiff that allows the defendant to ascertain that the CAFA requirements are met. 28 U.S.C. § 1446(b); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013). In the Ninth Circuit, a defendant may also remove under CAFA "at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) have been triggered." *Id.* at 1125–26.

## ARGUMENT

### I. The Complaint Triggered the Thirty-Day Deadline for Defendant to Remove Under 28 U.S.C. § 1446

Whether either of the thirty-day windows set out by § 1446 has been triggered depends on whether the complaint demonstrates that it is removable. A defendant is not required to "make extrapolations or engage in guesswork" to determine whether a complaint or other paper demonstrates removability under CAFA. *Kuxhausen*, 707

F.3d at 1140. However, the defendant is still expected to "apply a reasonable amount of intelligence in ascertaining removability." *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2nd Cir. 2001). The Court should consider each element of CAFA jurisdiction to determine whether the Complaint showed that removal was proper from the onset of the case. *See Kuxhausen*, 707 F.3d at 1140–41.

Here, the Complaint put Defendant on notice of the basis for removal from the instant it was served. (To be clear, Defendant was already on notice when it received the CLRA letter and engaged in negotiations even before the Complaint was served.) Specifically, both the number of potential plaintiffs and the amount in controversy are established by the Complaint.[1] The Complaint adequately put Defendant on notice that there were more than 100 members of the putative class. The Class Allegations section explains that "the Class consists of many thousands of members. . ." ECF No. 1-2, ¶ 71. The Complaint alleges that "all or nearly all of the reference[s]" to "higher prices on the website are false and misleading." *Id.* at ¶ 7. Likewise, the Complaint alleges that Defendant's deceptive business practices apply to "many, if not all" of Defendant's products sold on its website. *Id.* at ¶ 43. Moreover, the Complaint explains that "Defendant has earned millions of dollars selling products at misrepresented discounts that do not actually exist. . ." *Id.* at ¶8. These references to the size of the alleged deceptive acts, while not expressly listing a specific number, are more than sufficient to indicate to Defendant that any putative class would be far in excess of 100 people. *See Banta v. Am. Med. Response Inc.*, No. CV 11–03586 GAF (RZx), 2011 WL 2837642, at *7 (C.D. Cal. July 15, 2011) (noting that "the pleading provided much information regarding the scope of this litigation."); *Haver*

---

[1] Neither party disputes that the Complaint also alleges minimum diversity, as Plaintiff is a citizen of California and Brooklinen is incorporated in Delaware and headquartered in New York. *See* ECF No. 1-2, ¶¶ 12–13.

*v. Gen. Mills, Inc.*, 3:24-cv-01269-CAB-MMP, 2024 WL 4492052, at *1 (S.D. Cal. Oct. 11, 2024) (the complaint stating that a class contained "at least thousands of members" was sufficient to establish numerosity under CAFA to support removal); *Vigil v. Irwin Naturals*, No. LA CV16-04103 JAK (JCx), 2016 WL 6806206, at *5 (C.D. Cal. Nov. 17, 2016) (references in other papers to selling over a million units of items "makes it likely that there have been a large number of unique purchasers.").

The Complaint likewise put Defendant on notice from the start that more than $5 million was at issue. The Complaint alleges that "Defendant has earned millions of dollars selling products at misrepresented discounts that do not actually exist." ECF No. 1-2, ¶ 8. The Complaint further alleges that Defendant "sold millions of units of merchandise to customers in California and nationwide." *Id.* at ¶ 19.[2] Coupled with the Complaint's references to the deceptive practices covering most, if not all, of Defendant's sales, this is more than a sufficient basis to have put Defendant on notice from the four corners of the Complaint that CAFA removal was on the table. *See id.* at ¶¶ 8, 43; *Banta*, 2011 WL 2837642, at *7–9 (taking the complaint and the documents together to determine that amount-in-controversy had been earlier established such that removal was untimely); *Komins v. Yonamin*, No. 2:21-cv-02757-MCS-RAO, 2021 WL 1966166, at *2 (C.D. Cal. May 17, 2021) (even without dollar amount, finding that the complaint and other documents supported amount-in-controversy making removal untimely); *Rodriguez v. Swissport USA, Inc.*, No. CV 15–3951–GW (PLAx), 2015 WL 4977187, at *3–4 (C.D. Cal. Aug. 20, 2015)

---

[2] This allegation in the Complaint put Defendant on notice that there was more than $5 million at issue because it conveys that there were millions of products sold in California, and a majority of its products are listed for more than $100. *See gen.,* BROOKLINEN, INC., https://www.brooklinen.com/ (last accessed 11/14/2025). In fact, as Brooklinen does not sell any products for less than $6, the amount at issue could not possibly "mean any amount between $1 million and $4,999,999," as Defendant would have this Court believe. Def's Opp. to Pltf's Mot. (ECF 9) at 6.

(holding the defendant was on notice about CAFA amount-in-controversy due to large class size).

Defendant's arguments do not refute this. Defendant correctly notes that the Ninth Circuit holds that the thirty-day windows for removal under CAFA only begin when either the initial complaint, or a later paper, makes it apparent that CAFA jurisdiction exists. *See* ECF No. 9, 5–6 citing to *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690-91 (9th Cir. 2005), *Kuxhausen*, 707 F.3d 1136. However, critically, as Plaintiff explained in his initial motion to remand, CAFA jurisdiction *was apparent from the filing of the initial Complaint*. Defendant alleges that Plaintiff "ignores" Ninth Circuit precedent in relying on *Banta* in his Motion to Remand. See ECF No. 9 at 7. But Plaintiff's citation to *Banta* functions as an example of a situation where the circumstances of the case established the amount-in-controversy long before the defendant's removal. *See Banta*, 2011 WL 2837642, at *7–9. And, as explained below, the kinds of gamesmanship disavowed by the court in *Banta* are similar to Defendant's gamesmanship in this case. *See id*. Moreover, Defendant's reliance on *Kuxhausen* is misplaced. There, the trial court, on its own initiative, multiplied the 200-member class by the $25,000 of damages from the named plaintiff to find the amount in controversy satisfied. *See Kuxhausen*, 707 F.3d at 1141. Here, Plaintiff is not asking the Court to multiply the number of alleged class members by the lead Plaintiff's damages.

*Roth* is similarly distinguishable from the present case, as the court in *Roth* concluded that "the FAC in this case was at best 'indeterminate.'" 720 F.3d at 1125. In the *Roth* FAC, there was no mention of millions of dollars in damages or any mention of the number of employees. *See* Ex. 2 to the Toomajian Declaration. The matter at hand is strikingly different. Plaintiff's Complaint described Defendant's sale of millions of units to customers in California and nationwide, as well as the millions of dollars in revenue earned by Defendant "selling products at misrepresented

discounts that do not actually exist." ECF No. 1-2, ¶¶ 8, 19. And as noted in *Roth*, "[a] defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so." 720 F.3d at 1125.

The Complaint not expressly providing the exact amount of damages is not necessarily fatal to triggering the thirty-day window when the Complaint, taken as a whole, clearly notified the Defendant that CAFA jurisdiction was applicable. *See Banta*, 2011 WL 2837642, at *7–9 (holding defendant on notice despite the complaint not expressly providing the exact amount of damages); *Komins*, 2021 WL 1966166, at *2 (allowing remand in a class action case where the pleading and other papers made clear a large class size existed, despite the pleading not expressly listing a specific dollar amount); *Rodriguez*, 2015 WL 4977187, at *3–4 (finding removal proper due to the circumstances despite no express number for the amount-in-controversy).

**II.     Defendant's Gamesmanship Requires Remand**

Defendant's gamesmanship is apparent from even a cursory review of the record. Defendant's registered agent was served with the Complaint on January 15, 2025. ECF No. 1-3. Prior to that, Defendant was served with a CLRA Notice on August 9, 2024, which demanded sales data and instructed Defendant to preserve all documents and data related to sales of their products in California. Defendant missed the deadline to respond to the Complaint and defaulted. The Parties engaged in settlement discussions and entered a joint stipulation to provide Defendant with more time to file its answer. *See* ECF No. 1-5. Defendant filed its Answer on May 30, 2025. ECF No. 2. On July 31, 2025, Plaintiff served its Requests for Production and Interrogatories on Defendant. Defendant asked for another extension on August 29, 2025, specifically agreeing to substantively respond to Plaintiff's discovery requests

within the extension period. Instead, on the date those responses were due, Defendant removed the case to this Court. *See* ECF No. 5-3.

Additionally, Defendant was well aware of its large sales during this time period and could have removed this case within thirty days of service of the Complaint. For instance, an August 21, 2023, article in *Business Insider* states that in 2019 Brooklinen made close to $100 million in sales, and in 2020 "Brooklinen celebrated its 1 millionth customer and 1 millionth sheet sale."[3] Further, an April 2, 2025, article in *Inc.* stated that Brooklinen "generates around $200 million in revenue each year."[4] Defendant knew of its large number of sales and California customers for years prior to the removal, but now asks the Court to accept that Defendant only suddenly discovered this information in August 2025. This professed ignorance defies any reasonable belief and represents the kind of impermissible gamesmanship that has been rejected by district courts that have been confronted by it, even post-*Roth*. *See Gomez v. Roadrunner Transp. Servs.*, 2023 WL 5487663, at *4 (N.D. Cal. Aug. 23, 2023) (noting that numerous other post-*Roth* courts have scrutinized the timeliness of removal when the defendant's action suggests gamesmanship or undue delay); *Banta*, 2011 WL 2837642, at *7–8 (determining from the documents on the record that gamesmanship was involved in the removal decision); *Vigil*, 2016 WL 6806206, at *4("The scope and nature of these proceedings also raises issues as to when the defendant had reason to know" removal was proper). Here, Defendant has been on

---

[3] Ellen Hoffman and Connie Chen, *Brooklinen review: These sateen sheets are one of the best purchases I've ever made*, BUSINESS INSIDER (Aug. 21, 2023), https://www.businessinsider.com/guides/home/brooklinen-sheets-review .

[4] Burba, Annabel, *Brooklinen Just Proved it's Never Too Late to Make Changes Based on Customer Feedback*, INC. (Apr. 2, 2025), https://www.inc.com/annabel-burba/brooklinen-just-proved-its-never-too-late-to-make-changes-based-on-customer-feedback/91169807 .

notice and in fact litigating the case, even asking Plaintiff for extensions for both its Answer and discovery responses. That Defendant did not remove until eight months after the Complaint was filed, on the very date that its extended discovery responses were due, demonstrates this impermissible gamesmanship—both as to delay and potentially as to seeking a second bite at the apple by filing a dispositive responsive motion, whereas at the state court, Defendant's tardiness limited it to filing an answer. ECF No. 1-5 at 36.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court remand the case to the California Superior Court for the County of San Diego because Defendant improperly removed outside of the thirty-day deadline for removal and because CAFA's amount in controversy requirement is not satisfied.

Dated: November 14, 2025

Respectfully submitted,

*/s/ Charles R. Toomajian III*

**ZIMMERMAN REED LLP**
Charles R. Toomajian III
(SBN 302153)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (800) 755-0098
Fax: (877) 500-8781
charles.toomajian@zimmreed.com

**ZIMMERMAN REED LLP**
Caleb LH Marker (SBN 269721)
Jessica M. Liu (SBN 358713)
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781
caleb.marker@zimmreed.com
jessica.liu@zimmreed.com

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Tel: (601) 270-0197
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com

* *Pro Hac Vice* application to be submitted.

*Counsel for Plaintiff and the Proposed Class*